[J-89-2020] [MO: Baer, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | | |
|---|---|---|
| JOHN THOMAS LINKOSKY, | : | No. 16 WAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| | : | December 5, 2019 at No. 98 CD |
| v. | : | 2019, affirming the Order of the |
| | : | Court of Common Pleas of |
| | : | Allegheny County entered January |
| COMMONWEALTH OF PENNSYLVANIA, | : | 17, 2019 at No. S.A. 18-1015 |
| DEPARTMENT OF TRANSPORTATION, | : | |
| BUREAU OF DRIVER LICENSING, | : | ARGUED:  October 21, 2020 |
| | : | |
| Appellant | : | |

## DISSENTING OPINION

**JUSTICE DONOHUE**                    **DECIDED:  MARCH 25, 2021**

I respectfully dissent because I agree with the Commonwealth Court's interpretation of the statutes and regulations at issue in this case.  Once a licensee requests a duplicate camera card by furnishing satisfactory proof of the loss of his license and remitting payment of the fee, the Pennsylvania Department of Transportation ("PennDOT"), must then issue a new camera card to the licensee.  75 Pa.C.S. § 1513(a). PennDOT does not have discretion to create any additional eligibility criteria, including a requirement to direct an additional inquiry to the National Driver Registry ("NDR") for a review of whether the license had been suspended or revoked by Pennsylvania or another state.  *See* 49 U.S.C. § 30302.

In approaching matters of statutory interpretation, the object is always to "ascertain and effectuate the intention of the General Assembly."  1 Pa.C.S. § 1921(a).  The best

indication of the General Assembly's intention is the plain language of the statute. *Ladd v. Real Estate Commission*, 230 A.3d 1096, 1111 (Pa. 2020). Moreover, we construe every statute "to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

The relevant provision of the Vehicle Code, Section 1513(a) – "Duplicate and substitute drivers' licenses" – provides as follows:

> **General Rule.**– If a learner's permit or driver's license issued under the provisions of this chapter is mutilated, lost, stolen, destroyed, or becomes illegible, the person to whom it was issued, upon furnishing proof satisfactory to [PennDOT] that license or permit has been mutilated, lost, stolen, destroyed, or has become illegible, shall obtain a duplicate or substitute license or permit upon payment of the required fee.

75 Pa.C.S. § 1513(a). By its terms, the provision provides that a licensee "shall obtain a duplicate … license" upon furnishing satisfactory proof of the loss and upon payment of the fee. *Id.*

In this case, when PennDOT issued Linkosky his temporary internet license on October 4, 2018, he was a licensed Pennsylvania driver who only needed to take the camera card to a driver's license center to obtain a permanent photo license. When he lost the camera card, he did precisely what Section 1513 of the Vehicle Code required of him to obtain a replacement camera card: he furnished satisfactory proof of the loss of his license and remitted payment of the necessary fee. 75 Pa.C.S. § 1513(a). Once Linkosky complied with these requirements, "the Vehicle Code mandated that [PennDOT] issue [Linkosky] a duplicate license." *Linkosky v. Dep't of Transp.*, 222 A.3d 1213, 1217 (Pa. Commw. 2019) (citing 75 Pa.C.S. § 1513(a)). As the Commonwealth Court accurately explained, through his application Linkosky merely sought a replacement of the camera card. Importantly, by its express terms, Section 1513(a) does not trigger a

new license renewal process (including, of importance here, a new review of the NDR registry). *Id.*

In contrast to Section 1513(a), Sections 1503 and 1506 of the Vehicle Code set forth the basic license issuance or renewal process, including the satisfaction of eligibility requirements before issuance of an original or renewal license. 75 Pa.C.S. §§ 1503(a), 1506(a). Sections 1503 and 1506 together provide that issuance of a license or a renewal license requires an application whose contents are determined by PennDOT, "and shall contain such information as [PennDOT] may require to determine the applicant's identity, competency and eligibility." 75 Pa.C.S. § 1506(a). Pursuant to Section 1503, one factor making an individual ineligible for a license is if the driver's "operating privilege is suspended or revoked in this or any other state." 75 Pa.C.S. § 1503(a)(1).

Established by federal statute, the NDR registry includes, inter alia, "each individual … who is convicted under the laws of that State of … operating a motor vehicle while under the influence of, or impaired by, alcohol or a controlled substance." 49 U.S.C. § 30304(a). Of relevance here, Section 30304(e) describes the inquiry requirement:

> (e) Driver record inquiry.-- Before issuing a motor vehicle operator's license to an individual or renewing such a license, a State shall request from the Secretary information from the [NDR] under section 30302 and the commercial driver's license information system under section 31309 on the individual's driving record.

49 U.S.C. § 30304(e). Thus, an NDR inquiry must be completed "[b]efore issuing a motor vehicle operator's license to an individual or renewing such a license." *Id.* This requirement to make an NDR inquiry prior to "issuing … or renewing… a license" is consistent with Sections 1503 and 1506 of the Pennsylvania Motor Vehicle Code,

requiring verification that the driver's license is not suspended or revoked prior to issuance of an original or renewal license. 75 Pa.C.S. §§ 1503, 1506.

According to the federal regulations implementing the statute, the chief driver licensing official of a participating state shall submit an NDR inquiry before issuing each driver's license. 23 C.F.R. § 1327.5(b). The regulation states as follows:

> (b) State of inquiry function for driver licensing and driver improvement purposes.
>
> > (1) The chief driver licensing official of a participating State shall submit an inquiry to both the NDR and the Commercial Driver's License Information System for each driver license applicant before issuing a license to that applicant. The issuance of a license includes but is not limited to **any original, renewal, temporary, or duplicate license that results in a grant or extension of driving privileges in a participating State.**
> >
> > (2) The chief driver licensing official of a participating State may submit inquiries for other driver licensing and driver improvement purposes.

*Id.* (emphasis added). This inquiry requirement does **not** apply to every type of request for a temporary or duplicate license, but only those "that result[] in a grant or extension of driving privileges[.]"

As PennDOT recognizes, its renewal of Linkosky's driver's license (and its issuance to him of the original camera card), constituted an extension of his driving privileges. PennDOT's Brief at 15-16 ("The Department's issuance of a camera card, whether an original camera card or a duplicate camera card, does result in the granting or extending of a person's privilege to operate a motor vehicle within the Commonwealth."). This renewal of his driver's license required an NDR inquiry – which

did not result in a finding that his license had been suspended or revoked by any state. No additional NDR inquiry was required for the issuance of a replacement camera card, as the replacement camera card did not result in a "grant or extension of driving privileges" in Pennsylvania. His Pennsylvania driving privileges had **already** been extended by virtue of the grant of his renewal application. *Id.* at 16 ("As Linkosky would not have needed to **apply for** a driver licensing product if he had not lost his camera card, he could have received a photographic driver's license even after his operating privilege was suspended in Ohio on October 16, 2018, because a Photo Center does not process driver license applications or check the NDR.").

Linkosky's application for a duplicate camera card did not trigger an NDR inquiry under federal law. Federal regulations regarding drivers' licensing do not override state law. As acknowledged by the National Highway Traffic Safety Administration ("NHTSA"), NDR requirements do not preempt state law or set conditions on licensing decisions. Procedures for Participating in and Receiving Data from the National Driver Register Problem Driver Pointer System, 70 Fed. Reg. 43570-01 (July 29, 2005). As the NHTSA recognized, traditional licensing authority belongs to the state. *Id.* Therefore, even if the federal regulation at issue, 23 C.F.R. § 1327.5(b), required a new NDR review in this circumstance (it does not), Section 1513(a) of the Pennsylvania Vehicle Code would take precedence, and that provision requires **only** a representation that the original camera card had been lost and the payment of a predetermined replacement fee. 75 Pa.C.S. § 1513(a).

The Majority holds that the federal regulation "unmistakably equates the issuance of a temporary or duplicate license with the issuance of an original or renewed license for

purposes of" NDR inquiry. Majority Op. at 14. The Majority does not direct us, however, to any language in 23 C.F.R. § 1327.5(b) in support of this contention. The Majority reasons that the issuance of a duplicate camera card "grants or extends driving privileges within the meaning of the federal regulation because the duplicate camera card functions as the driver's license." *Id.* While it is true that the duplicate camera card functions as a (temporary) driver's license until the permanent picture license is obtained, the temporary license does not grant or extend any new driving privileges. Linkosky's driving privileges were extended on October 4, 2018 when PennDOT granted his renewal application and sent him an original camera card. Because his driving privileges had already been extended, the replacement camera card did not effectuate any grant or extension of any kind.

Moreover, the Majority's reasoning focuses on the federal regulation, 23 C.F.R. § 1327.5(b), without recognizing that it does not usurp Pennsylvania law, specifically Section 1513(a). In this regard, the Majority rejects the Commonwealth Court's interpretation of Section 1513(a), noting its use of the term "General rule" in the preface. Majority Op. at 15. In the Majority's view, the term "General rule" makes clear that "the enumerated directive is not without exception." *Id.* Because Section 1513(a) prevails over the federal regulation, 23 C.F.R. § 1327.5(b) does not constitute an "exception" to Section 1513(a). The provisions of Section 1513(a) must be applied in Linkosky's case, as it clearly and unambiguously sets for the process for obtaining a duplicate camera card.

For these reasons, I dissent, as I would affirm the decision of the Commonwealth Court.

Justice Todd joins this dissenting opinion.